# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

IN RE:   TRUCKCENTER OF TIDEWATER, INC.,            Case No. 01-70929-A
                                                    Chapter 11
         Debtor.

_____

## MEMORANDUM OPINION AND ORDER
_____

This matter is before the Court on the debtor's Motion for Confirmation of Limited Scope of Prior Order ("Motion for Confirmation") and East Coast Auto Transport, Inc.'s ("ECAT"), Motion to Dismiss, Conduct a Non-evidentiary Hearing and to Continue the Evidentiary Hearing ("Motion to Dismiss").  The current motions relate to a settlement agreement between ECAT and the debtor, along with other parties, regarding the debtor's Motion to Assume and Assign Dealer Agreements and Sell Assets Outside the Ordinary Course of Business, Free and Clear of Liens ("Sale Motion"), which settlement agreement was memorialized in an order entered on the Court's docket on July 26, 2001 ("the Order" or "Order").  The debtor and ECAT now disagree as to the scope of the Order.  The Court must decide whether the Order settled all matters between ECAT and the debtor or whether the settlement was limited to issues in the Sale Motion.  This is a core proceeding over which this Court has jurisdiction under 28 U.S.C. §§ 157(b)(2) and 1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**FINDINGS OF FACT**

On March 30, 2001, the debtor filed for relief under Chapter 11 of the United States Bankruptcy Code and continued to operate its business as a debtor in possession pursuant to 11 U.S.C. § 1107.

On April 5, 2001, the debtor filed the Sale Motion, which proposed to sell substantially all of the debtor's assets to Virginia Truck Center. Objections to the Sale Motion were filed by Tidewater Mack, Inc. (who later withdrew their objection), Freightliner LLC, Volvo Trucks North America, Inc., and the Unsecured Creditors Committee. After the filing of numerous pleadings and two previous hearings, on May 25, 2001, the Court ordered all related parties to participate in a mandatory settlement conference and be prepared to proceed at a final hearing scheduled for June 13, 2001. On June 11, 2001, the settlement conference was held with counsel and/or a representative from the following entities participating: Truckcenter of Tidewater, Inc., Freightliner, LLC, VA Truck Center of Richmond, J.C. Webb, III, Associates Commercial Corp., ECAT, the Unsecured Creditors Committee and the Office of the U.S. Trustee. At the hearing on June 13, 2001, the parties represented to the Court that a settlement had been reached and on July 26, 2001, the Order was entered settling the Sale Motion.

There are several paragraphs in the Order that are relevant to this inquiry. First, Paragraph F of the Procedural History section states, "At the hearing on June 13, 2001 [], the Debtor and the [sic] all related Parties informed the Court that the parties did participate in the June 11th Mandatory Settlement Conference and settled all remaining

2

matters related to the [Sale] Motion." Order Granting Sale Motion, July 26, 2001.

Secondly, in the Findings of Fact section of the Order, Paragraph 14 states:

> At the Mandatory Settlement Conference, the parties agreed to a global settlement of all outstanding issues and sought the Court's approval of the Debtor's [Sale] Motion subject to the following terms:
> (a) East Coast will purchase (free and clear of liens and encumbrances) Trucks Under Contract for $1,807,000.
>   i. Associates will provide East Coast with the financing (with terms that are mutually acceptable to Associates and East Coast) for that sale.
>   ii. Debtor will turn the Trucks Under Contract over to East Coast.
>   iii. Upon request from Associates, Truckcenter will endorse and forward the appropriate documents of title, commonly referred to as "M.S.O.'s", to Carl Eason, counsel for East Coast.
>   iv. The specific trucks to be purchased by East Coast are listed on Exhibit "A" which is attached to this Order.[1]
>
> (b) Virginia Truck Center will purchase (free and clear of liens and encumbrances) the Debtor's New Truck Not Under Contract for full invoice price minus curtailments and will finance the purchase independently.
>   i. As of the date of the June 13 hearing, Freightliner, Associates and Virginia Truck Center had not agreed upon the amount of the curtailments. <u>However, prior to the entry of this Order the parties did, in fact, agree upon the correct amount of the curtailments.</u>
>   ii. Freightliner agreed to withdraw its objection to the Motion, only after Virginia Truck Center agreed to purchase the New Trucks Not Under

---

[1] None of the Exhibits referred to in this paragraph or the following quote from the ruling are attached to this Order as there is no dispute regarding them. Additionally, this quote and the following one reference terms that are defined in the Order, but are not defined here. Their definitions are unimportant for this ruling; it is the provisions themselves on which the Court is focusing.

3

        Contract for the full invoice price. Virginia Truck Center and Freightliner agreed to terms and memorialized them in a separate memorandum. The nature and terms of that agreement are proprietary and confidential for which public disclosure would cause harm [to] [sic] Freightliner and Virginia Truck Center. Thus, the Court will incorporate appropriate disclosure restrictions or confidentiality provisions under seal as prescribed in a separate [o]rder.

    iii.    The specific trucks to be purchased by Virginia Truck Center are listed on Exhibit "B" to this Order.

(c) Associates shall receive all of the proceeds, free and clear of all liens, claims and encumbrances excepting those of Associates, from both:

    i.    The sale of New Trucks Under Contract to East Coast; and

    ii.    The sale of New Trucks Not Under Contract to Virginia Truck Center.

(d) Truckcenter shall voluntarily surrender its Used Truck Inventory to Associates.

(e) Associates shall release and waive any remaining claims against the estate. The estate and the Committee of Unsecured Creditors will release and waive any claim against Associates.

(f) Freightliner will be paid in full for its claim relating to the Parts Inventory, approximately $411,000. This amount will be paid from: (a) credits available to Truckcenter from Freightliner including credits for commissions due in the future from Freightliner and its affiliate with respect to the sale of American La France fire trucks; (b) from the proceeds of the sale of the assets to Virginia Truck Center; and (c) from amounts held in escrow pursuant to this Court's Interim Order Authorizing Use of Cash Collateral entered on may 10, 2001.

(g) Freightliner shall waive all other claims against the Debtor, except that Freightliner shall have a general unsecured claim of $700,000.00 against the estate. The parties to this Order agree that they shall not object to this claim.

(h) Virginia Truck Center and J.C. Webb, III have

4

        renegotiated the terms of Mr. Webb's Employment
        Consulting and Non-Competition Agreement, a copy
        of which is attached as Exhibit "C".

(i)    The Debtor's Motion to Sell Assets (in accordance with the Asset Purchase Agreement as amended to be consistent with these settlement terms) should be approved and all objections should be withdrawn.

    i.    The Amendment to the Asset Purchase Agreement is attached as Exhibit "D"; and

    ii.    The closing on the sale of the assets to Virginia Truck Center should occur by June 30, 2001, or as soon thereafter as practical.

(j)    The Debtor's Motion to Assume and Assign the Dealership Agreements [Sale Motion] should be approved and all objections are withdrawn / settled.

*Id*. Finally, the ruling enunciated in the Order reads:

> For good cause shown, it is:
>
> **ORDERED**, that the [Sale] Motion of the Debtor, shall be, and hereby is, granted; and
>
> **ORDERED**, that the sale of the New Trucks Under Contract (as identified in Exhibit "A") to East Coast (free and clear of liens and encumbrances) for $1,807,000.00, is approved and Associates will provide East Coast with financing (with terms that are mutually acceptable to Associates and East Coast) for that sale;
>
> **ORDERED**, that the sale of the New Trucks Not Under Contract (as identified in attached Exhibit "B") to Virginia Truck Center (free and clear of liens and encumbrances) for full invoice price minus curtailment, is approved;
>
> **ORDERED**, that the sale of the VTC-Assets to Virginia Truck Center free and clear of liens and encumbrances pursuant to the Asset Purchase Agreement as modified by the Amendment to Asset Purchase Agreement is approved;
>
> **ORDERED**, that Freightliner's objection is dismissed as withdrawn with terms of the agreement between Virginia Truck Center and Freightliner as disclosed to the Court in a Memorandum to be filed with the Court's Clerk's Office under seal as prescribed in a separate [o]rder;

Case 01-70929-SCS    Doc 291    Filed 06/14/06    Entered 06/16/06 11:14:41    Desc Main
Document    Page 6 of 12

> **ORDERED**, that Associates shall receive all of the proceeds, free and clear of all liens, claims and encumbrances excepting those of Associates, from both the sale of New Trucks Under Contract to East Coast, and the sale of the New Trucks Not Under Contract to Virginia Truck Center;
> **ORDERED**, that Truckcenter shall immediately surrender its Used Truck Inventory to Associates for each respective truck;
> **ORDERED**, that all remaining claims of Associates against the Chapter 11 estate are hereby waived and released;
> **ORDERED**, that all of the claims of the estate and the Committee of Unsecured Creditors against Associates are hereby waived and released;
> **ORDERED**, that Freightliner shall be paid in full for its claim relating to the Parts Inventory from: (a) credits available to Truckcenter from Freightliner; and (b) from the proceeds of sale of the assets to Virginia Truck Center; and (c) from amounts held in escrow pursuant to this Court's Interim Order Authorizing Use of Cash Collateral entered on May 10, 2001;
> **ORDERED**, that Freightliner shall be entitled to file a general unsecured claim in the amount of Seven Hundred Thousand ($700,000.00) Dollars against the estate which none of the parties represented in this Order shall be permitted to oppose;
> **ORDERED**, that all remaining claims of Freightliner against the Chapter 11 estate are hereby waived and released,
> **ORDERED**, that the Debtor's Motion to Assume and Assign the Dealership Agreements is hereby approved and all objections are withdrawn as settled;
> **ORDERED**, that Virginia Truck Center shall be entitled to the protections afforded by 11 U.S.C. § 363(m) in the event that this Order, or any part of it, is reversed or modified on appeal....

*Id.*

Subsequent to the entry of the Order, the debtor filed a state court action in the Circuit Court of the City of Virginia Beach to enforce the estate's claim against ECAT.

On May 18, 2005, the debtor filed its Motion for Confirmation seeking clarification of the Order in response to ECAT's assertion that the debtor is barred from any recovery in state court based upon the Order's terms.  The debtor requested an evidentiary hearing on this matter, which was scheduled for June 21, 2006; however, ECAT felt the Court could decide the matter based solely on the language of the Order and, therefore filed its Motion to Dismiss requesting an expedited non-evidentiary hearing, which the Court granted and was held on June 6, 2006.  These are the instant Motions.

## ARGUMENTS

ECAT argument is simple and can be summed up in two words:  global settlement.  ECAT argues that the use of this term of art in the Order (Finding of Fact, ¶14) is evidence that all outstanding issues between it and the debtor were resolved.  ECAT claims that the debtor effectively waived any claims it had against ECAT based upon the single use of the term "global settlement" and should, therefore be barred from continuing with its state court action.

The debtor argues that ECAT is attempting to "reach back and broaden the scope of the [] Order to include settlement of a pre-petition contract claim."  Debtor's Mot. for Confirmation ¶ 21.  The debtor states that ECAT is focusing solely on two words, "global settlement," and ignoring the remainder of the document and the standard rules of contract construction.  The debtor argues that the Order, when read *in toto*, clearly settles only those matters in the Sale Motion, itself.  Further the debtor argues that had a release of all claims against ECAT been negotiated during the

7

settlement conference, such language would have been included in the Order, as was done with other parties to the settlement agreement and Order (*i.e.* Freightliner and Associates). As no such language is in the Order, the debtor argues that it never released the estates' claims against ECAT and should be allowed to pursue its state court action.

## CONCLUSIONS OF LAW

Courts speak through their orders. *Murdaugh Volkswagen, et al. v. First Nat. Bank of S.C.*, 741 F.2d 41, 44 (4th Cir. 1984). When the order is a consent order, principles of basic contract construction are used to determine the scope or meaning of that order, as agreed orders "have many of the attributes of ordinary contracts." *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236-37 (1971), *see also Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314, 319 (4th Cir. 2000). Contract interpretation is governed by applicable state law. *Videsh Sanchar Nigam Ltd. v. Startec Global Communs. Corp., et al. (In re Startec Global Communs. Corp., et al.)*, 300 B.R. 244, 250 (Bankr. D. Md. 2003). In this case Virginia law governs.

Courts must construe contracts as they are written and may not add terms that the parties did not include. *Quadros & Assocs., P.C. v. City of Hampton*, 268 Va. 50, 54 (2004). Additionally, contracts must be read in whole versus "plac[ing] emphasis on isolated terms." *Id.* (citing American Spirit Ins. Co. v. Owens, 261 Va. 270, 275 (2001) and Lansdowne Dev. Co. v. Xerox Realty Corp., 257 Va. 392, 401 (1999).

8

In the instant case, the Court finds that the Order in question, when read as a whole is clear and unambiguous regarding the issues being settled. At the outset, the Order states that "all remaining matters related to the [Sale] Motion" were settled. Order, Procedural History, ¶ F. Even in the paragraph ECAT points to as support for their position, the Order relates the settlement to the Sale Motion. *Id.* at Findings of Fact, ¶ 14 ("At the Mandatory Settlement Conference, the parties agreed to a global settlement of all outstanding issues and sought the Court's approval of the *Debtor's Motion*....") (emphasis added).

Additionally, and perhaps even more telling than the references to the Sale Motion, are the release of claims provisions in the Order. In the ruling, the debtor explicitly waives all claims against Associates (Order, Ruling, p. 10), and both Associates and Freightliner waive all claims against the estate (*Id.* pp. 10-11). It would have been very easy for ECAT and the debtor to include an additional waiver of their claims against one another, but the Order contains no such provisions. Given the language of the Order, it is obvious that the parties knew what language to use to effectuate releases and waivers; therefore the Court must assume that the parties did not intend any such waiver of the estate's claims against ECAT. According the rules of contract construction the Court can not read such a waiver into the agreement when it is clear that none was intended, especially when doing so would be based on the single use of the words "global settlement" in a provision that also references the approval of the debtor's Sale Motion, a reference that seems to suggest that the global settlement is limited to the issues in that Motion.

9

ECAT cites several cases to bolster its "global settlement" argument, but the Court does not find the case law persuasive or applicable; in each case the term was merely used to summarize settlement negotiations and was uncontroverted. None of the cases cited further ECAT's position. While the Court agrees with ECAT that the use of the term "global settlement" generally indicates that all issues have been resolved, the term must be taken in context. The use of the term here is tempered by references to the Sale Motion, coupled with a conspicuously absent waiver of claims against ECAT, making it impossible to find that the settlement is a global as ECAT would have us believe. This case is a complicated Chapter 11 bankruptcy; there were many issues involved in the Sale Motion alone, allowing the Court to be comfortable with the use of the term "global settlement" in reference to it.

Further, the operative language of an order is found in its ruling or its holding. *See Michowski v. Visi-Trak Worldwide, LLC*, 415 F.3d 501, 508 (6th Cir. 2005) (holding that a confirmation order remained valid even though the order that was entered was titled "'ORDER TO VACATE ORDER CONFIRMING PLAN OF REORGANIZATION,'" because the operative language of the order only vacated the "second amended plan of reorganization [and] not the confirmation order"), *Akermanis v. Sea-Land*, 688 F.2d 898, 906-07 (2nd Cir. 1982) (holding that a trial judge had the discretion to allow a retrial on all or part of the involved liability issues when his opinion stated that the defendant was "entitled to a new trial 'on the question of contributory negligence,' but the operative language of his order grant[ed] a new trial 'on liability issues'"), *Walker v. Jackson*, 391 F. Supp. 1395, 1400 (E.D. Ark. W. Div. 1975) (finding the operative

10

language of an order followed the wording "'it is ORDERED'" ).  In the case at bar, the term "global settlement" is used only once in the Findings of Fact, but never mentioned in the Court's ruling, therefore, it can not be controlling as it is not found in the operative language of the Order.

Finally, and while this has no impact on the clarity of the Order (which the Court has already determined), we feel it is important to note that ECAT is not mentioned in the Sale Motion, or any other pleading that the Court is aware of, prior to it being named in the Order.  If ECAT's assertion was true, then the debtor would have been waiving its right to all claims against ECAT without the prescribed notice to creditors and other parties-in-interest; that is an assertion this Court is unwilling to accept.  The idea that the Order resolved every possible claim the debtor and ECAT had against one another goes against not only the notice provisions of the Bankruptcy Code, but also the clear language of the Order itself.

Reading the Order in whole, it is clear to the Court that the Order merely resolved the issues raised in the Sale Motion and nothing beyond it.

## CONCLUSION

We have determined that the following resolution of the issues presented is appropriate under the facts of this case and the law as applied to those facts:

1. The July 26, 2001 Order is clear and unambiguous.
2. In the July 26, 2001 Order the debtor did not waive any claims it has against ECAT or the right to pursue those claims in a court of proper jurisdiction.

3. ECAT's Motion to Conduct a Non-evidentiary Hearing is **GRANTED**.

4. The debtor's Motion for Confirmation of Limited Scope of Prior Order is **GRANTED** without further hearing.

5. ECAT's Motion to Continue the Evidentiary Hearing is **DENIED**.

6. ECAT's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**
Norfolk, Virginia
June 14, 2006

_____
David H. Adams, Judge
United States Bankruptcy Court

Copies to:
    Carl A. Eason, Esquire
    John M. Ryan, Esquire